NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4639
_____

UNITED STATES OF AMERICA

v.

DAVID KOLLIE,

Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 09-cr-00191-001)
District Judge:  Honorable William H. Walls

_____

Argued September 18, 2012
Before: SLOVITER, RENDELL and HARDIMAN, *Circuit Judges*.

(Filed: October 17, 2012)

Mark E. Coyne
Steven G. Sanders [Argued]
Office of United States Attorney
970 Broad Street
Room 700
Newark, NJ 07102-0000
        *Attorneys for Appellee*

Peter M. Carter [Argued]
Office of Federal Public Defender
1002 Broad Street
Newark, NJ 07006
        *Attorney for Appellants*

HARDIMAN, *Circuit Judge*.

David Kollie appeals his conviction and sentence following a jury trial. Although we agree that Kollie's evidentiary challenge has merit, we will affirm the judgment of the District Court because its error was harmless.

I

We write for the parties, who are well acquainted with the case, so we summarize only the facts and procedural history essential to our decision.

Between December 2005 and May 2006, at the urging of his acquaintance Toafeek Haruna, Kollie deposited eight fraudulent checks issued by the Federal Emergency Management Agency in the wake of Hurricane Katrina (FEMA checks) and one fraudulent income tax refund check into accounts he controlled. In 2007, Kollie was interviewed by the Secret Service regarding those deposits. During the interview, Kollie signed a handwritten statement in which he stated that he had deposited "7 to 8" FEMA checks, each worth $2,358, that he had received from Haruna. For each check he deposited, Kollie kept $358 and gave the rest to Haruna. Kollie also stated that Haruna offered to pay him $1,000 to deposit a $7,449.91 tax refund check. However, Kollie kept the entire balance of that check. Kollie further explained his actions: "I ask [Haruna] if

2

the checks was [sic] real, he said yes, and he said he put some in his account. And I decided, if the checks was [sic] real I would deposit it in my account." Kollie also admitted: "Depositing a check that is not yours is wrong, which I realized and notice [sic] that [Haruna] was using me for little or nothing. That was when I decided not to give him any check with [sic] large amount that I received from him. I would like to apologize for my acts and definately [sic] promise not to do such again."

Kollie was charged with one count of conspiracy to commit offenses against the United States; nine counts of stealing public money, property, and records; and nine counts of forging endorsements on Treasury checks. All of these counts required Kollie to have acted "knowingly and intentionally." Kollie proceeded to a jury trial.

Two days before trial, the Government sent Kollie's attorney a letter describing the grand jury testimony of Kafilat Ogunsolu, an associate of Haruna. Between November 2005 and February 2006, Ogunsolu had left Haruna the keys to her apartment and mailbox so he could collect her mail. Ogunsolu also permitted Haruna to use her address "for a reference." Accordingly, Ogunsolu sometimes received mail in the names of other people and usually asked Haruna to come to her apartment and check whether the mail belonged to him or his friends. Unbeknownst to Ogunsolu, Haruna used her address to receive two of the fraudulent FEMA checks that Kollie later deposited.

The day before trial, the Government sent Kollie's attorney a second letter describing an interview between law enforcement and Folake Aboyade, a friend of

3

Haruna. Aboyade had allowed Haruna to use her bank account and bank card because Haruna had poor credit. Aboyade had also allowed Haruna to use her mailing address and had received letters addressed to other people. Unbeknownst to Aboyade, Haruna used her bank account and card to deposit one fraudulent FEMA check.

At trial, Kollie testified in his own defense and did not deny that he had deposited the nine checks at issue. Rather, Kollie argued that Haruna duped him into believing that the checks were legitimate. In particular, Kollie testified that Haruna told him he would be depositing the checks on behalf of displaced Hurricane Katrina victims who had no other way of receiving their assistance funds. As for the tax refund check, Kollie testified that Haruna told him that it belonged to Haruna's uncle, who could not deposit it into the joint checking account he had with his wife because of marital problems. In support of his defense, Kollie filed a motion in limine to introduce the testimony of Ogunsolu and Aboyade because "the evidence that Mr. Haruna made similar misstatements to two other individuals clearly lends support to Mr. Kollie's defense that Mr. Haruna lied to him about the legitimacy of these checks, and bears directly on the issue of Mr. Kollie's knowledge."

The District Court denied Kollie's motion because it deemed the evidence irrelevant. The jury convicted Kollie on all counts and he appeals, claiming that the District Court's failure to admit his proffered evidence constitutes reversible error.

The Government conceded in its brief that Kollie's proffered evidence was relevant. Although the Government argued in its brief that the evidence should have been excluded under Federal Rule of Evidence 404(b), it essentially conceded at oral argument that the evidence was admissible because it tended to show that Haruna had a plan or scheme to defraud FEMA rather than just a propensity to defraud. We agree that the District Court erred by not admitting Kollie's proffered evidence, so we proceed to consider the Government's argument that any error was harmless.

## II[1]

Under the harmless error doctrine applicable in non-constitutional cases such as this one, we should not reverse the District Court's ruling if it is "highly probable that the error did not contribute to the judgment." *United States v. Helbling*, 209 F.3d 226, 241 (3d Cir. 2000). High probability requires more than just a preponderance of the evidence, but it does not require "disproving every reasonable probability of prejudice." *United States v. Mathis*, 264 F.3d 321, 342 (3d Cir. 2001). The harmless error analysis must "begin with the guilty verdict the jury has already rendered." *Id.* at 343. From there, we must weigh the strength of the Government's case against the probative value of the erroneously excluded evidence. *See United States v. DeMuro*, 677 F.3d 550, 566 (3d Cir.

---

[1] The District Court exercised jurisdiction pursuant to 18 U.S.C. § 3231 and we have jurisdiction over Kollie's appeal under 28 U.S.C. § 1291.

2012) (finding harmless error when "the evidence against [defendant] . . . was substantial" and the excluded evidence "was of minimal probative value").

Weighing the strength of the Government's case with the probative value of the excluded evidence shows that the District Court's error was harmless. The Government's case against Kollie was strong. At trial, Kollie conceded that he: did not mention his alibi when first interviewed by the Secret Service; had to write "pay to the order of David Kollie" on each check he deposited; only received one check at a time to ensure that each check cleared; alternated between two different banks when depositing the checks; kept $358 (15%) out of each $2,358 check; and kept the entire $7,449 tax refund check without considering the possibility that the person entitled to the refund might call the police. Kollie also admitted in his written statement to the Secret Service that it was wrong to cash checks belonging to others and apologized for doing so. This evidence demonstrates that Kollie knew the nine checks were fraudulent when he deposited them. Furthermore, that evidence is factually undisputed and not impeached by Kollie's erroneously excluded evidence. *Cf. United States v. Stevens*, 935 F.2d 1380, 1406 (3d Cir. 1991) (finding two evidentiary errors were not harmless when they both "involved evidence that detracted from the reliability of the victims' identifications—the sole predicate for Stevens's convictions").

In contrast to the strength of the Government's evidence, the probative value of Kollie's evidence is minimal. Kollie was a much more significant and active player in

6

Haruna's scheme than was Ogunsolu or Aboyade. Neither Ogunsolu nor Aboyade knew that checks of any kind were coming in, while Kollie did. Aboyade received no tangible benefit from Haruna, and Ogunsolu only received the benefit of having Haruna move her mail from her mailbox to her apartment. In contrast, Kollie received a $358 commission for each check he deposited. In addition, both Ogunsolu and Aboyade merely gave Haruna permission to do certain things, while Kollie took the affirmative step of depositing the checks. The fact that Kollie played a different and much more substantial role than either Ogunsolu and Aboyade means their purported innocence has only a limited bearing on whether Kollie was innocent. *Cf. United States v. Aboumoussallem*, 726 F.2d 906, 912 (2d Cir. 1984) (finding that "evidence that several months earlier Nazih duped a stranger did not have much probative force to show that he duped his cousin Yagih"). Because Kollie's evidence was only minimally relevant and the Government's case was compelling, we hold that the District Court's error was harmless.

III

For the reasons stated, we will affirm the judgment of the District Court.